The issue before the Court is whether the District Court erred in granting Appelli's motion to dismiss, and denying plaintiffs the right to discovery, and thereby denying their day in court. The case was prematurely adjudicated on factually contested statute of limitations issues and other matters. The District Court invaded the province of the jury and arbitrarily selected the statute of limitations date, and they were not even sure of the date themselves. They threw out two dates, ECF 116 at page 31. They're not sure of the date themselves. Breyer. Well, that's not exactly accurate. It was giving the benefit of the doubt the most favorable date of being, you know, the, it was May 2012, right? Royce. I think they were, to be perfectly honest, Your Honor, respectfully, I think they were not sure of the date themselves. Breyer. Well, you're saying there were disputed facts, but I went back and looked at your complaint. Claim 1, it's alleged it occurred in 2011. Claim 2 is alleged that it occurred in 2008. Put aside claim 5 for a moment, but all the other claims certainly accrued at the time of the reorganization. So I'm having a hard time. Royce. But that's an arbitrary date, because we have the date that the plan went into effect, the date that it was approved, and the date that the bankruptcy order was closed, which is June 29th. And up until that date, June 29th, as per Section 4.8 of the bankruptcy order, unsecured creditors, such as Captain Maymaris, could bring claims as long as it was within the auspices of the plan. So that's why we considered an arbitrary date, because why not choose the date the bankruptcy closed when people could still bring claims? Breyer. It doesn't matter whether they could bring a claim or not. The harm had already occurred. The reorganization had already happened. Whether or not someone could bring a claim doesn't relate to the accrual date. The accrual happened because the harm had already happened. Once the reorganization is final, right? Or am I missing something? Royce. Well, a couple of the earlier claims had nothing to do with the reorganization. Breyer. I know, but I just went through them with you. Other than claim 5, which we can talk about, but claim 1, it's 2011, right? Royce. Okay. Breyer. It says in the complaint. Royce. Yes, it does. Breyer. 2011. Claim 2 says 2008, right? Royce. Right, but the question is, why are they choosing the bankruptcy as the date for the accrual of the statute of limitations and not 2014? Breyer. Well, can we put it this way? As of the May date, couldn't you have brought suit? Royce. I'm sorry? Breyer. As of the May 2012 date, you could have brought suit, right? Royce. Yes. Breyer. That's another way of saying the claims had accrued, right? Isn't that the same thing? Royce. More or less, yes. Breyer. Well, a claim accrual means when you have a complete claim. Royce. Correct. Breyer. So then, isn't that the accrual date? Royce. If you look at it that way? Breyer. Well, how else do you look at it? Royce. We look at it that it's not the accrual date, Your Honor, because Breyer. But what you just said. Royce. You could have sued them. Royce. Are you now saying in May 2012 you could or could not have sued them? Royce. We could have sued them at any time up until we feel that the accrual date is 2014. Breyer. Hang on. Just wait a minute. Then let's make sure we're talking about the same definitions and terms. Royce. Okay. Breyer. What do you consider in the abstract to be the definition of an accrual date? Put aside this case. Royce. Okay. Breyer. When all the elements of a claim have existed? Royce. Exactly. Breyer. Okay. So now let me go back to the original question I asked. Don't you agree, I think you just agreed, that in May 2012 all the elements existed? Royce. Yes, you are correct. Breyer. Okay. So that's the accrual date, right? Royce. Yes. Breyer. Now, I understand you also have this argument that there's a continuing violation. And I get that that is conceptually a reason why a claim could extend further. Royce. Okay. Breyer. So you could explain why you think Royce. Sure. Breyer. You know, you still had time. Royce. Mm-hmm. Breyer. But that's different from arguing that it's a later accrual date. Right? Royce. Yes. Breyer. Or no. Royce. Yeah, it is. Breyer. I don't want to put words in your mouth. Royce. It is. You're correct. May I proceed? Breyer. Okay. Royce. Okay. Royce. The district court departed from the fundamental standard of a motion to dismiss and failed to accept every allegation in the plaintiff's complaint as true. And they also failed to allow plaintiffs the right to discovery. However, they accepted most of the allegations of defendants as true. This case arises out of fraud, as you know, whereby the police took advantage of Captain Maymaris when he was very ill. And he couldn't strike back. He was too ill to realize what was going on until the very end, which is when he executed his affidavit slash dying declaration. Your Honors, fairness, demands, and the law requires, and we respectfully request, that this court reverses the district court order motion in judgment and remands the case back to the lower court for further proceedings, including but not limited to discovery. The two most important points we'd like to touch on today, although we are not vacating everything in our brief, is the issue of the fifth cause of action and the other causes of action. We feel the district court urn stating the fifth cause of action is only against the dismissed defendant, Mr. LaRue, and that the continuing wrong doctrine... The cause of action is labeled fraudulent transfer of Captain Maymaris' interest in TBS-Ecuador by Jaime LaRue. Why wouldn't that be reasonably construed to be... That's the only cause of action that references a particular defendant in the heading. I think the cause against action against TBS also, it's just a title. It's not an allegation. In the prayer for relief, it says compensatory damages for the breach of fiduciary duty based upon fraud for Jaime LaRue facilitating the transfer of Captain Maymaris' share. So in the prayer for relief, it again singles him out. It singles him out as facilitating the transfer, but may I present my argument? Sure. Thank you. So if you look at paragraph 131, which the district court ignored, Mr. LaRue is saying, I didn't have anything to do with this. But the shares are now in defend... in FLE's Royce and Blatt's hands. But you have to allege fraud with particularity. All the allegations relate to what Mr. LaRue said to him to get him to give those shares to him. That's what... I'm sorry? Every paragraph in that claim relates to what misrepresentations you allege Mr. LaRue made to have Captain Maymaris give him those shares, right? Correct, but it also... There are no representations regarding the other defendants, and you have to allege fraud with particularity. Not... not... yes, you're correct, Your Honor. You do have to allege fraud with particularity, especially under Rule 9b. So how do we know what... However, when... Let me ask my question. Yes. How do we know when Mr. LaRue told those other defendants about what to Captain Maymaris? We have no idea what they said to those other... what he said to those other defendants, right? You're correct. We certainly don't, and we don't know how those shares ended up into Apeli's hands. We don't know. And that's, again, why we requested discovery and why we wanted discovery so we could factually develop this case. Yes, you do have... The rule is you have to allege particularity first to get discovery. That's... that's the rule. You can't allege particularity when the... when all the information is in the Apeli's hands. We... we had very little to work with. And if you look at Rule 1... I'm sorry, is that an exception to Rule 9? It's... Are you saying that if you don't know, then you are excused from complying with Rule 9b? I'm saying that the standard is loosened to Rule 9b when all of the... when all the information is in the hands of Apeli's. Do you have a case that says that? That you can invert the order? I don't know. Your Honors, can I... I have the case, but can I submit it to you later on? Thank you. You have two minutes in rebuttal, so if you want to look for it, I don't want you to use your time looking for it now. Okay. Thank you. So final... So in Paragraphs 1 through 1... Paragraph 128 is very telling. It reincorporates Paragraphs 1 through 127 into Cause of Action 5. Therefore, depositing Mr. Royce and Mr. Blatt into that Cause of Action. So if we're ignoring all of these paragraphs, and this is... At the very least, we should have discovery on this Cause of Action. Also, Paragraphs 131 through 140 do make them culpable. I mean, the shares were in Captain Maymaris' hands in 2013. They end up in Royce and Blatt's hands in 2014. Mr. LaRue is contesting to Mrs. Maymaris and her daughter. I didn't do anything, but it's there in their hands. It's a reasonable inference. Plus, you have Paragraph 128 reasserting 1 through 127 and depositing them back into this Cause of Action. So in our view, at the very least, discovery should be had to truly determine what happened because these gentlemen now have Captain Maymaris' shares. I don't think anybody gratuitously said, Here, take these shares. They were his partners. They knew they were his shares. Captain Maymaris, at this point, is dead, and they're stealing from him. I think your time is up, but you reserved two minutes for rebuttal. Thank you. Okay. In rebuttal, Your Honor, may I bring up the other issue of the Cause of Action? Sure. Thank you. Okay. We'll hear, I think we're going to hear from Mr. Rodriguez first. May it please the Court. Good morning, Your Honors. Adam Rodriguez of Blakely, Blatt & Schmidt for the appellees Royce and Blatt. Your Honors, it's clear, I think, based on the statements here at the argument, the briefings here, and the briefing below, that the appellants don't have any specific factual allegations of misconduct to levy against my clients that are actionable within the relevant statute of limitations window. And if you pivot to what Judge Nardini was pointing to, the tolling arguments and the continuing violation arguments, I think those arguments should be rejected properly. For example, the tolling argument, this tolling argument based on the Burnett Supreme Court case is unpreserved for appellate review, but even if it's considered, the case is factually and legally distinguishable. It's factually distinguishable because the plaintiff improperly brought an action in state court in Ohio, whereas here, the initial action was properly brought in state court in New York. Now, to be sure, the venue was thought to be moved from New York County to Westchester County, but ultimately the plaintiff decided to dismiss the state court action voluntarily. And the case law, I think, is very clear that voluntarily dismissed actions are legal melodies and don't satisfy for tolling purposes. The continuing violation doctrine is also inapplicable. It doesn't apply to cases such as this. It's more aptly applied in nuisance cases or a harassment case. And here we've got independent claims which are labeled as such in the complaint that have no significant nexus to one another. And ultimately, to have a continuing violation exception, you need some actionable misconduct within the limitations period, which here, it's effectively conceded there is none. For all those reasons, Your Honors, we think that the district court properly dismissed the complaint with prejudice. The appellants were given multiple opportunities to amend the complaint below. Most notably, the last amendment was made after we previewed our arguments to dismiss. I put in a pre-motion conference letter and the appellate Prieto actually filed his motion including a memorandum of law that went into the timeliness issues and the pleading issues. And the appellants, respectfully, just weren't able to come forth with any facts to demonstrate any timely misconduct by our clients. So, for all those reasons, Your Honor, we think that the district court's opinion should be affirmed. Now, at this point, I have some time. I'm happy to rest on my papers, but if the panel has any questions, with respect to anything, I'm happy to address that also. On Claim 5, it's not even clear to me when the transfer of shares took place. I guess, from the complaint, you can't even tell. 2014 is the date that's being thrown out there, but that's when, I guess, he learned that the transfer had taken place. So, we don't even really know, right? That's correct, Your Honor. I mean, as an initial matter, I think as the panel has recognized the complaint and the district court recognized and the magistrate judge recognized the complaint was addressed to Mr. LaRue who's no longer a part of here. But you're right. I mean, there's no factual elaboration about any misconduct by my clients or any of the defendants or appellees. So, there's no way of knowing when the claim or the alleged misconduct occurred. So, it doesn't satisfy Rule 8, let alone 9b, which is an alternate basis of dismissal that the magistrate judge or the district judge recognized. And, you know, to address just some of the specific arguments, even if you take the point that paragraph 128 incorporates and re-alleges all the preceding paragraphs, it doesn't help because none of the preceding paragraphs, A, have anything really to do with the allegations about this company in Ecuador and, B, there are no specific allegations in the preceding paragraphs that my clients engaged in any misconduct, timely or otherwise, that had anything to do with this transaction. So, you know, again, we think that the claim was properly dismissed and subject to dismissal on a variety of bases. All right, thank you. We'll now hear from Mr. Farhan. May it please the Court, Aaron Barham for Defendant Appellee Tulio Prieto. It's an honor to be before the Court today. Thank you. My presentation will focus on the claims that have been asserted against Mr. Prieto and Mr. Prieto is only a named defendant in the fourth cause of action for fraud and the sixth cause of action for conspiracy to commit fraud. And in the entire complaint, the only allegation that Mr. Prieto, who is an attorney, is alleged to have done is that in October 2011, Mr. Prieto asked the decedent to sign a document which the decedent refused to sign. So, even if this allegation could support a claim for fraud under 9b, which it does not, plaintiff's fraud cause of action against Attorney Prieto is time barred because this action was commenced in May 2018, more than six years from when Mr. Prieto sent the document and more than four years after the decedent allegedly discovered the alleged fraud in the summer of 2013. Focusing on the continuous wrong doctrine points which were discussed earlier, the plaintiff refers to the fifth cause of action that refers to all, refers only to defendant LaRue who was discontinued against. Attorney Prieto is not mentioned in that cause of action so there's no basis to use the continuous wrong doctrine to extend the accrual date for any claim against Mr. Prieto. Also, the statute of limitations was not told during the state court action and this was a new argument that wasn't raised before the lower court. As counsel stated before, the equitable tolling doctrine does not apply and the case Bernetta is not applicable and New York state procedural law is very clear that when an action is voluntarily dismissed or discontinued, it's as if that action were a nullity. And again, this state court action is irrelevant as against Attorney Prieto because of the October 2011 accrual date for any action that he's alleged to have committed. Although the district court didn't make any specific finding on this issue, we also argue in the brief that the third amended complaint fails to state of action against Attorney Prieto for fraud with requisite particularity. Likewise, the plaintiff fails to state a claim for a civil conspiracy to commit fraud. The cases are cited in my brief and those are fairly clear and additionally, there can be no claim for civil conspiracy when the plaintiff fails to plead an underlying court. If there are any other specific questions, I'd be happy to address them. If not, I can rest on the briefs and I thank the court for allowing us to present today. It's an honor to be here. Thank you. Thank you. We have now Mr. Zarni. Did I pronounce that right? That's correct. May it please the court, my name is Noah Zarni. I'm an attorney with Seward & Kissel. We represent TBS Shipping Services aka Guardian Navigation. The operative complaint here alleges a single cause of action against TBS Shipping. It's stylized, quote, knowledge of fraud and the district, excuse me, the district court characterized the seventh cause of action as sounding and aiding and abetting fraud. There were three overarching rulings with respect to TBS Shipping. First, the plaintiff fails to adequately plead aiding and abetting against TBS Shipping. Second, that the aiding and abetting claim is otherwise time-barred, which I think has been addressed by Mrs. Mamaris and others. And third, the complaint should be dismissed with prejudice because any amendment would be futile. All three of these rulings were correct and should be affirmed. Turning to the failure to plead aiding and abetting, which I think is likely the only issue that hasn't yet been raised, as this panel has recognized, a cause of action for fraud requires the heightened pleading standards of Rule 9b. Under New York law, the elements are both a plaintiff is required to plead actual knowledge and substantial assistance. I draw the panel's attention to page 42 of Helen's brief. There, it's abundantly clear that they're hanging this claim almost entirely on the boilerplate allegation that CBS Shipping, quote, participated in the fraud, the underlying fraud, allegations of fraud. That's patently inadequate. The only allegations are an awareness and a participation that doesn't plead the cause of action for aiding and abetting under even the more lenient pleading standards, let alone the heightened pleading standards of Rule 9b. And critically, there are no set of facts that can be alleged here against CBS Shipping. The appellants have conceded that TBS Commercial and TBS Ecuador are separate, privately held, legally distinct entities from TBS Shipping. And the underlying allegations as it relates to the individual defendants, the allegations are that this conduct was for their own purported personal enrichment. So there are no set of facts here that could be pleaded consistent with what's already been pleaded to plead a viable aiding and abetting claim against TBS Shipping. I have nothing further to add with respect to the statute of limitations argument. I'll just briefly touch on some of the arguments that were made in appellant's brief as it relates to Burnett. I think, as others have mentioned, that case is different than the facts here both because that was a federal statute that relied on the congressional intent of the FELA and also it was grounded on a notion of fairness where there was a mistake with respect to venue a genuine bonafide mistake with respect to venue whereas here the voluntary dismissal of the state action was very clearly a considered litigation strategic choice by the appellants. So therefore the underlying reasoning in Burnett just simply has no application here. If there are no other questions I'm happy at this point to rest on our briefing. I think we have no other questions. Thank you. Okay. Ms. Marish, you have two minutes in rebuttal. Okay. So your honor, before I get into the Burnett case I wanted to draw the attention to the court that the appellees and the district court all relied on the state court case to preclude a plaintiff's amendment in the district court. And I don't know if you want me to run down the ECF citations and page numbers but there are plenty. Just in the R&R the report and recommendation at 113 at pages 13, 16, and 135 the magistrate is saying she's already they've already amended there are six pleadings in this case. Then TBS in 124 at page 2 states six pleadings. Mr. Royce and Mr. Blatt ECF 126 there are seven pleadings. Here in this court in their briefs again 115 at page 41 there are seven pleadings in this action. TBS goes as far to say quote unquote there are six pleadings with three amended complaints in this action. What does that tell us? It tells us that they're mixing the two cases. However, they're allowed to rely on the state court case to preclude amendment of appellants but appellants are not allowed to rely on it for tolling purposes. That it doesn't make logical sense. But then they backpedal Mr. Royce and Mr. Blatt when they realize what we are arguing in the same document ECF 115 at page 41 they're saying there's seven pleadings. In that document ECF 115 at page 25 they're saying the state court case is a nullity. And also Mr. Prieto ECF 114 at page 19 is saying the state case is a nullity as though it didn't exist. Well, if it didn't exist how is the district court relying on it three times in her report and recommendation to the judge which the judge relied on and how are all the appellees relying on it if it didn't exist? It did exist. And if they get the benefit of using that to preclude amendment of appellants then we should get the benefit for tolling purposes. But what amendment could you add? You can't change the dates? No, we wouldn't change the dates. So what could you add? We would just add more information that we found out about after effect. And to be perfectly honest Your Honor the day that we filed the third fourth TAC why? Because You just told me you needed discovery in order to allege additional facts regarding We do need we definitely need discovery but we also wanted to amend it to add a few facts that we found out. The day we filed the TAC we filed a motion immediately thereafter for a fourth amended complaint it wasn't because we all of a sudden found new facts we realized we filed the wrong draft of the TAC. Why was there such a delay after the obviously the captain's affidavit spelled out what he what he believed to be were these massive frauds? Why was the lawsuit only filed five years later? I'll tell you what Your Honor the appellant Ms. Helen Max she was very sick she fell broke her hip was in bed a year she didn't find the affidavit until 2017 after in 2017 her daughter was who had been battling cancer since a child was diagnosed with breast cancer she got and that's right after she got over that we filed in 2018 then her daughter once again was diagnosed with sarcoma and passed away earlier this year a lot of illness a lot of sickness Mrs. Maymaris and her daughter and of course the death of Captain Maymaris but she didn't find the affidavit until 2017 and that's why there was a delay she would have pursued these claims not if honestly it wasn't it was about her husband her husband went on business trips and left her alone with four kids to raise just so he could grow this company with his partners who he thought were friends May I turn briefly to the Burnett? I'll give you another 30 seconds but we feel the Burnett tolling principle is valid because it is similar in that the plaintiff did not sit on their rights the Burnett tolling principle allows a plaintiff who has not sat on their rights to equitably toll her case to the state court case and where the plaintiff has made a good faith attempt to file the case in a court of competence jurisdiction where the defendants were served with proper notice these defendants were on notice three times they were on notice when we did not say it was improper venue so we feel that the case is very similar in Burnett they filed eight days after we actually filed two days after but because of errors it was the time is up I give you a little extra time because I ate up some of your rebuttal questions but we have these arguments in the papers so thank you very much thank you so much and as before we respectfully request for this to be further ordered and judgment to be reversed and remanded for further proceedings at the meeting adjourned